**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **HERTZ INVESTMENT GROUP LLC, ET AL.** | **CIVIL ACTION NO. 21-CV-0482** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **ZURICH AMERICAN INSURANCE CO., ET AL.** | **MAGISTRATE JUDGE KATHLEEN KAY** |

# SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MOTION TO REMAND


**PHELPS DUNBAR LLP**

Virginia Y. Dodd, Bar Roll No. 25275
Heather S. Duplantis, Bar Roll No. 30294
Kevin W. Welsh, Bar Roll No. 35380
II City Plaza | 400 Convention St., Suite 1100
Baton Rouge, Louisiana 70802-5618
Post Office Box 4412
Baton Rouge, Louisiana 70821-4412
Telephone: 225-346-0285
Telecopier: 225-381-9197
Email: ginger.dodd@phelps.com
heather.duplantis@phelps.com
kevin.welsh@phelps.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

A. The Policy Terms Expressly Detail Who May Qualify as an Insured ..................1

B. HLCO is not a Subsidiary of HIG..........................................................................2

C. The Property Management Agreement does not Require HLCO be Named an Insured ..................................................................................................9

D. HLCO's Citizenship is Irrelevant Because it is not a Real Party in I Interest...............................................................................................................10

CONCLUSION..................................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cumulus Investors, LLC v. Hiscox, Inc.*,
2021 U.S. Dist. LEXIS 29821 (D. Minn. 2/18/21) ....................7

*Grace Ranch, L.L.C. v. BP Am. Prod. Co.*,
989 F.3d 301 (5th Cir. 2021), *as revised* (Feb. 26, 2021) ....................11, 12

*Liggett Group Inc. v. Ace Prop. Cas. Ins. Co.*,
798 A.2d 1024 (Del. 2002) ....................5, 6, 9

*Mirpad, LLC v. California Ins. Guarantee Assn.*,
132 Cal. App. 4th 1058 (Cal. Ct. App. 2 Dist. September 19, 2005) ....................4

*National Union Fire Ins. Co. v. Beelman Truck Co.*,
203 F. Supp. 3d 312 (S.D.N.Y. 8/24/16) ....................8

*New Castle County v. Hartford Accident and Indem. Co.*,
933 F. 2d 1162 (3d Cir. 1991) ....................2

*Norfolk Southern Corp. v. Cal. Union Ins. Co.*,
2002 CA 0369 (La. App. 1 Cir. 9/12/03), 859 So. 2d 167 ....................4

*Olympic Pipe Line Co. v. Somerset Marine, Inc.*,
2004 Wash. App. LEXIS 2720 (Wash. App. 11/8/04) ....................7

*Searle v. Allstate Life*,
38 Cal. 3d 425 (1995) ....................2

*Shell Oil Company v. Hollywood Marine, Inc.*,
97-106 (La. App. 5th Cir. 10/15/97), 701 So. 2d 1038 ....................4

*U.S. ex rel. Spicer v. Westbrook*,
751 F.3d 354 (5th Cir. 2014) ....................11, 12

*Texas Molecular, LP v. American Int'l Spec. Lines. Ins. Co.*,
2009 U.S. Dist. 146944 (S.D. Tex. 8/13/09) ....................7

*Waste Mgmt., Inc. v. AIG Specialty Ins. Co.*,
974 F.3d 528 (5th Cir. 2020) ....................10

*WH Holdings, LLC v. ACE Am. Ins. Co.*,
2013 WL 2286107 (E.D. La. May 23, 2013), aff'd, 574 F. App'x 383 (5th Cir. 2014) ....................2

**Statutes**

Cal. Civ. Code § 1638....................4

Cal. Civ. Code § 1644....................4, 5

Cal. Corp. Code §102(a)....................5

Cal. Ins. Code §2071....................10

La. R.S. 22:47(10)....................10

La.R.S. 22:1379....................8

La.R.S. 22:2205 (previously La.R.S. 22:1379)....................8

Louisiana Civil Code articles 3515....................4

Louisiana Civil Code articles 3537....................4

Rule 12 F.R.C.P.....................10

**Other Authorities**

www.dictionary.cambridge.org/us/dictionary/english/subsidiary....................9

www.merriam-webster.com/dictionary/subsidiary....................8

www.thelawdictionary.org/subsidiary....................8

Pursuant to the Court's Order dated April 30, 2021 (Doc. 28), Zurich American Insurance Company and American Guarantee & Liability Insurance Company (collectively "American Guarantee") submit this Supplemental Memorandum in Opposition to Motion to Remand following the completion of the jurisdictional discovery authorized by the Court. In short, there remains no evidence that Hertz Lake Charles One, LLC ("HLCO") qualifies as an insured under the insurance policy at issue for two separate and distinct reasons: 1) HLCO is not a subsidiary of Hertz Investment Group, LLC ("HIG") and 2) HIG was not contractually obligated to name HLCO as an insured. As a party not insured under the insurance policy, HLCO is not a real party in interest to this suit and is not a proper plaintiff, such that its domicile is irrelevant to the determination of whether diversity jurisdiction is present in this case and should be disregarded. There is complete diversity among the remaining parties, making jurisdiction proper with this Court.

**A. The Policy Terms Expressly Detail Who May Qualify as an Insured.**

AGLIC EDGE Policy No. ERP0280044-03 ("the Policy) (Doc. 19-1) designates HIG as the "First Named Insured." The operative clause reads as follows:

> Named Insured and Mailing Address
>
> Hertz Investment Group, LLC
> 21860 Burbank Blvd
> Suite 300
> Woodland Hills, CA 91367
>
> hereafter referred to as the First Named Insured.
>
> The following are all hereafter referred to as the "Insured", including legal representatives.
>
> The First Named Insured; and
>
> any subsidiary of the First Named Insured. The First Named Insured's interest in any partnership, joint venture or other legal entity in which the First Named

> Insured has management control or ownership as now constituted or hereafter is acquired.

(Doc. 19-1, Ex. "A," p.13) (formatting and bolding omitted; paragraph breaks supplied).[1] The Policy does not contain an endorsement or a schedule of "additional insureds." Instead, there is only one scenario by which a party can become an "additional insured" under the Policy:

> When any Insured described above is a party to a written contract or agreement on file, that requires a legal entity to be identified as an additional insured under this Policy, this Policy includes the legal entity as an additional insured[.]

*Id.* at p.13.

The Policy makes it abundantly clear that absent evidence that HLCO is either a subsidiary of HIG or that HIG is contractually obligated to name HLCO as an insured, insured status is lacking. All evidence provided by Plaintiffs demonstrate that HLCO is not able to sustain its burden to establish that it is an insured under the Policy.[2]

**B. HLCO is not a Subsidiary of HIG.**

American Guarantee took the corporate depositions of both HIG and HLCO. The designated representative for both entities was John Forbess, general counsel for both entities.[3] Mr. Forbess testified that HIG is the contractual management company for HLCO, but that HIG has no direct ownership interest in either HLCO or HLCO's members.[4] He testified that at one

---

[1] For the convenience of the Court, American Guarantee has supplied pagination to the Policy in blue type on the lower right-hand corner of the document.

[2] HLCO bears the burden of showing that it is an additional insured entitled to enforce the policy. American Guarantee submits that the Policy should be interpreted under California law, but there is no conflict between California, Delaware or Louisiana law on this issue. *See Searle v. Allstate Life*, 38 Cal. 3d 425, 438 (1995); *New Castle County v. Hartford Accident and Indem. Co.*, 933 F. 2d 1162, 1181 (3d Cir. 1991); *WH Holdings, LLC v. ACE Am. Ins. Co.*, 2013 WL 2286107, at *3 (E.D. La. May 23, 2013), aff'd, 574 F. App'x 383 (5th Cir. 2014).

[3] See Ex. 1, Deposition of Hertz Investment Group, LLC, and Hertz Lake Charles One, LLC, through its duly authorized representative, John Forbess, taken on 05/27/2021, p.9:1-12.

[4] *Id.* at 33:4-35:7.

time, "90 plus percent" of the owners of HLCO were also owners of HIG.[5] However, "[t]oday, the [Hertz Group Realty] Operating Partnership [, LP] owns 100% of Hertz Lake Charles One, LLC so there is no longer than common ownership."[6] The timing of this change would appear to be the same as when the "After Roll-Up Restructure" took place in August 2019 and was still in effect at the time of the deposition.[7] Thus, there is no common ownership at all between HLCO and HIG, making HIG and HLCO "affiliate" entities, not a parent-subsidiary relationship. It bears mentioning that HIG and HLCO are 2 of approximately 300 "Hertz" entities.[8]

The structure for HLCO can be seen in the attached Exhibit 2. Specifically, HLCO's members are comprised of the following: 1) Hertz Lake Charles Manager, Inc.; 2) Hertz Properties Group, LLC and 3) Hertz Group Realty Operating Partnership, LP.[9] In turn, Hertz Group Realty Operating Partnership, LP is comprised of the following: 1) Hertz Group Realty Trust, Inc.; 2) Hertz Group REIT Advisor, LLC and "Legacy Investors".[10] Hertz Group Realty Operating Partnership, LP has an ownership interest in a number of entities other than HLCO.[11] The Legacy Investors comprise 99.9975% of the limited partnership.[12] Mr. Forbess testified that some of the entities titled Legacy Investors are also the ultimate owners of HIG.[13] Ultimately, the 100% member of Hertz Group Realty Trust, Inc. and Hertz Group REIT Advisor, LLC are "Hertz Manager Parties", which Mr. Forbess testified were also entities and/or individuals with

---

[5] *Id.*

[6] Ex. 1, 35:8-13 (as modified via errata sheet).

[7] Ex. 1, 34:6:16; 35:24-36:8. As the information related to the current ownership of HLCO was corrected via errata sheet and provided to counsel on June 10, to the extent there is any question of the ownership of HLCO at the relevant points in time, American Guarantee would respectfully request the opportunity to obtain clarification from HLCO as to its ownership at the time the policy was placed.

[8] Ex. 1, 9:13-17, 10:10-13.

[9] Ex. 2; Ex. 1, 36:22-37:2.

[10] Ex. 2; Ex. 1, 37:15-38:4. By agreement of plaintiffs and defendants, the names of any individuals with any interest in any entity referenced have been redacted from the transcript.

[11] Ex. 1, 38:23-39:6.

[12] Ex. 2.

[13] Ex. 1, 37:20-24.

an ultimate ownership interest in HIG.[14] In 2020 at the time the Policy was placed, HIG was owned by individuals and Hertz Investment Group, Inc.[15] And while at one time, the individuals that ultimately own HIG were also some—but not all—of the Legacy Investors and Hertz Manager Parties for HLCO, that changed in August 2019 with Hertz Group Realty Operating Partnership, LP now owning 100% of HLCO "so there is no longer that common ownership" between HLCO and HIG.[16]

The Policy extends insured status to any subsidiary of HIG. However, the facts do not establish that HLCO is a subsidiary; rather, the facts clearly show that HLCO is at best an affiliate of HIG, with no common ownership between them. HIG and HLCO are both organized under Delaware law, while HIG has its principal place of business in California, which is where the Policy was delivered. American Guarantee would submit that the law of California should apply to this dispute as the place of contracting.[17]

Under California law, the ordinary rules of contractual interpretation apply to insurance contracts.[18] Thus, the mutual intention of the parties at the time the contract is formed governs

---

[14] Ex. 2, Ex. 1, 40:16-41:5.

[15] Ex. 1, 41:14-42:5.

[16] Ex. 1, 40:16-41:5; 35:8-13.

[17] *See Norfolk Southern Corp. v. Cal. Union Ins. Co*., 2002 CA 0369 (La. App. 1 Cir. 9/12/03), 859 So. 2d 167, 180 (Court applied Virginia law to insurance dispute involving Louisiana locations. Under Louisiana Civil Code articles 3515 and 3537, court concluded that "Virginia clearly has the more significant contacts with the parties and the transactions at issue in this case", noting that the insured was both domiciled and incorporated in Virginia, the insured's claims offices were located in Virginia and notice of the claims came from these offices); *Shell Oil Company v. Hollywood Marine, Inc.*, 97-106, (La. App. 5th Cir. 10/15/97), 701 So. 2d 1038, 1041 (Court applied Texas law, stating "[a]lthough, the injury occurred in Louisiana, the injured party has been compensated and his judgment against Shell satisfied, and accordingly he has no interest in the outcome of this proceeding. Louisiana's interest arises only because a Delaware corporation, with its principal place of business in Texas, seeks indemnity under a policy of insurance issued in Texas to recover payment it made to recompense for damages it caused to a Louisiana citizen. We do not believe that this interest is sufficient to override the compelling interest Texas has in regulating insurance contracts written in Texas and issued to Texas companies. Accordingly, we hold that Texas law should be applied in this instance.").

[18] *See Mirpad, LLC v. California Ins. Guarantee Assn*., 132 Cal. App. 4th 1058, 1068 (Cal. Ct. App. 2 Dist. September 19, 2005); Cal. Civ. Code § 1638; Cal. Civ. Code § 1644.

the interpretation.[19] If the policy language is clear and explicit, then it governs.[20] Further, terms are given their ordinary and popular definition, unless used by the parties in a technical sense.[21]

HIG and HLCO are limited liability companies. We could locate no statute under California law defining what constitutes a subsidiary of a limited liability company. Section 189(a) of the California Corporate Code states that a "subsidiary of a specified corporation means a corporation shares of which possessing more than 50 percent of the voting power are owned directly or indirectly through one or more subsidiaries by the specified corporation." However, Cal. Corp. Code §102(a) provides that the California Corporate Code applies only to corporations organized under the California Corporate Code. As both HIG and HLCO are organized under the law of Delaware, this provision does not apply on its face; however, its terms would mandate a finding that HLCO is not a subsidiary of HIG.

The Delaware Supreme Court has had the opportunity to consider this exact issue under strikingly similar facts to those present here. In *Liggett Group Inc. v. Ace Prop. Cas. Ins. Co.*[22], the plaintiff, a tobacco products manufacturer, brought suit against several general commercial liability insurers seeking coverage for more than one thousand cases filed by plaintiffs seeking to hold Liggett liable for a broad range of personal injuries related to tobacco use. One of the policies sued upon extended insured status to "any subsidiary company and any other company coming under the Named Insured's control of which it assumes active management," which included Grand Metropolitan Public Limited Company ("Grand Met"). The term "subsidiary" was not defined within the policy.

[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] 798 A.2d 1024 (Del. 2002).

The Supreme Court of Delaware affirmed the Superior Court's finding that Liggett was not a "subsidiary" under this policy. Specifically, the court found that the term "subsidiary" encompasses only direct subsidiaries of the actual named insured, Grand Met. The court, citing a North Carolina Supreme Court case, stated that "although any ambiguity in the meaning of the words used in the policy must be resolved in favor of the insured, use of the plain, ordinary meaning of a term is the preferred construction."[23]

The court reasoned that because the term "subsidiary company" was not defined in the policy, the parties must have intended it to have its ordinary meaning. Several examples of ordinary and plain meanings of the disputed term "subsidiary" were offered in the opinion, including: a company having more than half of its stock owned by another company; a company whose controlling interest is owned by another company; and a subsidiary company is a company wholly controlled by another that owns more than half of its voting stock. Importantly, the court stated that this definition "reasonably and logically harmonizes the policy language granting coverage to 'any subsidiary company' of Grand Met, with the reality that Grand Met is a holding company with hundreds of direct and indirect subsidiaries worldwide."

The *Liggett* decision is consistent with other courts to have considered the issue. For example, in *United States v. Fla. West Int'l Airways, Inc.*, the Southern District of Florida noted the distinction between the term "affiliate" and "subsidiary".[24] The court stated that "affiliate refers to a corporation that is related to another corporation by shareholding or other means of control, and subsidiary refers to a corporation in which a parent corporation has a controlling share." The court expressly disagreed with the defendant's broader interpretation, which relied on a statutory definition from Delaware's Corporate Law Code. That statutory definition

---

[23] *Id.* at 1035.
[24] 853 F. Supp. 2d 1209 (S.D. Fla. 2011).

provides that "subsidiary means any entity directly or indirectly owned, in whole or in part, by the corporation of which the stockholder is a stockholder and over the affairs of which the corporation directly or indirectly exercises control." The court held that this broader interpretation conflicts with the plain and ordinary meaning because it advances a specialized definition limited to a section in Delaware's corporate statutes.

In *Olympic Pipe Line Co. v. Somerset Marine, Inc.*,[25] the court there defined "subsidiary" as "a company controlled by another company which owns most of its shares". Like the Policy here, the policy in *Olympic* did not name the party seeking coverage as a named insured, leaving the party to seek coverage as "such subsidiary or owned or controlled companies of the Named Insured".[26] The court looked to multiple dictionary definitions of the term, and stated that "[w]hile Olympic is correct that these definitions do not explicitly require majority ownership, the definitions do imply control by a single company".[27] *See also Cumulus Investors, LLC v. Hiscox, Inc.*, 2021 U.S. Dist. LEXIS 29821, *21 (D. Minn. 2/18/21) (court rejected argument that company with no direct ownership by the named insured was not an insured under the policy, stating that "the term subsidiary cannot be reasonably interpreted to include Cumulus, an LLC in which [the named insured] has no direct or indirect membership or interest").

There is additional support for the proposition that the terms "affiliate" and "subsidiary" are not identical. In *Texas Molecular, LP v. American Int'l Spec. Lines. Ins. Co.*,[28] the court was faced with interpreting an exclusion for injury to employees of the insured "or its parent, subsidiary, or affiliate." There, the Southern District of Texas found that an "affiliate" is generally defined as a "corporation that is related to another corporation by shareholdings or

---

[25] 2004 Wash. App. LEXIS 2720 (Wash. App. 11/8/04).
[26] *Id.* at *6.
[27] *Id.* at 22.
[28] 2009 U.S. Dist. 146944 (S.D. Tex. 8/13/09).

other means of control" or as a "company effectively controlled by another or associated with others under common ownership or control", citing *Eckland Consultants, Inc. v. Ryder, Stilwell Inc.*, 176 S.W.3d 80, 88 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (finding that the parent of a general partner in a limited liability partnership was an affiliate of the partnership).

In *National Union Fire Ins. Co. v. Beelman Truck Co.*,[29] the contract at issue included the terms "affiliate" and "subsidiary". The court provided no definition for subsidiary, but it defined "affiliate" by looking to Black's Law Dictionary, which defined the term as "A corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation". By implication, a subsidiary may be an affiliate, but an affiliate is not necessarily a subsidiary.

Outside of the insurance context, the case *Hopkins v. Howard* from an intermediate appellate court in Louisiana,[30] provides additional guidance. In *Hopkins*, the court was tasked with interpreting La.R.S. 22:1379 (now La.R.S. 22:2205), which defined "affiliate" as "a person who directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with another person." Ultimately, the court, with guidance from looking to Black's Law Dictionary, concluded that the term "affiliate" was broad enough to include the subsidiary, indicating the terms have different meanings under Louisiana law.

The online version of Black's Law Dictionary (2d Edition) currently defines "subsidiary" as an "enterprise that is controlled by another by owning more than 50% of voting stock."[31] Similarly, Merriam-Webster defines the term as "a company wholly controlled by another".[32] Lastly, the Cambridge Dictionary defines the term as "a company that is owned by a larger

[29] 203 F. Supp. 3d 312 (S.D.N.Y. 8/24/16).
[30] 2005-CA-0732 (La. App. 4 Cir. 4/5/06), 930 So. 2d 999.
[31] www.thelawdictionary.org/subsidiary.
[32] www.merriam-webster.com/dictionary/subsidiary.

company".[33] The Amended and Restated Agreement of Limited Partnership of Hertz Group Realty Operating Partnership, LP defines "subsidiary" as "with respect to any Person, any corporation, partnership, limited liability company, joint venture or other entity of which a majority of (i) the voting power of the voting equity securities or (ii) the outstanding equity interests is owned, directly or indirectly, by such Person."[34]

Using the guidance from *Liggett*, the other cases cited above, the dictionary terms and the definition provided by one of the 300 Hertz entities, it is clear that HLCO must be classified as an affiliate company to HIG as opposed to HIG's subsidiary. The two companies are related as part of the Hertz umbrella of approximately 300 companies, but HIG does not own HLCO and there is no longer common ownership between them. Thus, a parent-subsidiary relationship does not exist.

**C. The Property Management Agreement does not Require HLCO be Named an Insured.**

The Property Management Agreement (R. Doc. 24-1) states that "Manager [HIG] shall arrange for *Owner* [HLCO] to procure and maintain insurance against the hazards hereinafter provided for … [and] all such policies of insurance provided for herein shall name both Owner and Manager as insured thereunder". *Id.* at §5.7 (emphasis added). The agreement goes on to require *HLCO* (not HIG) to procure:

> Fire, extended coverage, including but not limited to earthquake insurance, and special extended coverage insurance in an amount the greater of 100% of the full replacement cost of the Building or such greater amount as may be required by the holder of any mortgage or deed of trust encumbering the Building. Said insurance shall include loss of rent insurance for a minimum period of eighteen (18) months and shall, at Owner's option, also include flood and/or earthquake insurance to the extent that flood and/or earthquake insurance are available. …

*Id*. at §5.7.2

[33] www.dictionary.cambridge.org/us/dictionary/english/subsidiary.

[34] Ex. 3, p. 13.

This provision created an obligation for HLCO to provide insurance for HIG, not the other way around, as stated by HLCO. It does not establish that HLCO, who is not named on the HIG policy, was required to be added as an additional insured under HIG's policy. Nowhere in this agreement is there a requirement that HIG procure insurance in favor of HLCO. It is exactly the opposite. The agreement requires HLCO procure that insurance. Here, HIG is the only named insured on the policy and thus obtained insurance for itself, not for HLCO. The management agreement makes no reference whatsoever to wind, windstorm or hurricane insurance. Thus, by its terms, the agreement does not apply to the HIG policy.[35] The corporate depositions further confirmed that this written contract has not been amended since its issuance, and that the written contract requires than any amendment to the contract be in writing.[36]

**D. HLCO's Citizenship is Irrelevant Because it is not a Real Party in Interest.**

American Guarantee has pending a motion to dismiss HLCO pursuant to Rule 12(b)(6) (R. Doc. 18), which has been deferred pending the Motion to Remand (R. Doc. 28). However, the analysis into whether HLCO has been improperly joined is the same. *See Waste Mgmt., Inc. v. AIG Specialty Ins. Co.*, 974 F.3d 528 (5th Cir. 2020). In *Waste Mgmt., supra*, the Fifth Circuit affirmed the district court's denial of a motion to remand because the claims of the non-diverse party were improperly joined to defeat federal jurisdiction, noting:

> The fraudulent joinder doctrine provides that a district court must disregard, for diversity jurisdiction purposes, the citizenship of an improperly joined defendant. *See Borden v. Allstate Ins. Co.*, 589 F.3d 168, 171 (5th Cir. 2009); *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (*en banc*). A non-diverse defendant is improperly joined if there was actual fraud in the pleading of jurisdictional facts or the plaintiff cannot establish a cause of action against the

---

[35] La. R.S. 22:47(10), which defines "Fire and allied lines" as inclusive of "loss or damage by … windstorms" does not dictate a contrary result. The terminology in the agreement is "Fire, extended coverage" not "Fire and allied lines". Further, the agreement is to be construed under the laws of the state of California. *Id.* at Standard Terms and Conditions, §5.5. The California Standard Form Fire Insurance Policy makes no reference to damage due to the peril of wind. California Insurance Code §2071.

[36] Ex. 1, 44:24-46:12; 48:10-20.

> non-diverse defendant. *See Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 401 (5th Cir. 2013). Only the second possibility is raised in this appeal.
>
> ***To determine whether the plaintiff can establish a cause of action against the non-diverse defendant, the district court conducts a Federal Rule of Civil Procedure 12(b)(6) analysis***. *See Smallwood*, 385 F.3d at 573; *see also Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016) (holding that the federal pleading standard applies when determining whether a plaintiff has stated a claim against a non-diverse defendant). The "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks and citation omitted). "[T]he existence of even a single valid cause of action against [non-diverse] defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court." *Gray v. Beverly Enters.-Miss., Inc*., 390 F.3d 400, 412 (5th Cir. 2004).

*Id.* at **7-8 (emphasis supplied).

The Fifth Circuit went on to find that "there was no reasonable probability that Waste would recover against AIG Claims" and "[t]herefore, the district court did not err in disregarding AIG Claims' citizenship and determining that there was complete diversity."[37] "In determining diversity jurisdiction, the citizenship of the real parties in interest is determinative, and the citizenship of nominal or formal parties who have no real interest in the dispute before the court may be disregarded." *Grace Ranch, L.L.C. v. BP Am. Prod. Co*., 989 F.3d 301, 309 (5th Cir. 2021), *as revised* (Feb. 26, 2021) (citing *Wolff v. Wolff*, 768 F.2d 642, 645 (5th Cir. 1985)). "The real party in interest is the person holding the substantive right sought to be enforced, **and not necessarily the person who will ultimately benefit from the recovery**." *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 362 (5th Cir. 2014) (citing *Wieburg v. GTE Sw. Inc*., 272 F.3d 302, 306 (5th Cir. 2001)).

Here, HLCO is not a real party in interest, but rather is an improperly joined party with no cause of action against American Guarantee whose citizenship should be disregarded. As

[37] *Id.* at *12.

such, the Court has diversity jurisdiction over this case and Plaintiffs' Motion to Remand should be denied.

## CONCLUSION

HLCO cannot satisfy its burden of proving that it is entitled to enforce the Policy. HLCO is not a "real party in interest" for diversity jurisdiction purposes for the same reason that it cannot maintain a claim against American Guarantee: HLCO has no contractual right to assert a claim against American Guarantee under the Policy. Thus, even if HLCO contends that HIG's suit will inure to its benefit, it remains—at best—a nominal party, such that its citizenship is jurisdictionally irrelevant. *See Spicer*, 751 F.3d at 362 and *Grace Ranch*, 989 F.3d at 309.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: *_/s/ Virginia Y. Dodd_*

Virginia Y. Dodd, Bar Roll No. 25275
Heather S. Duplantis, Bar Roll No. 30294
Kevin W. Welsh, Bar Roll No. 35380
II City Plaza | 400 Convention St., Suite 1100
Baton Rouge, Louisiana 70802-5618
Post Office Box 4412
Baton Rouge, Louisiana 70821-4412
Telephone: 225-346-0285
Telecopier: 225-381-9197
Email: ginger.dodd@phelps.com
heather.duplantis@phelps.com
kevin.welsh@phelps.com

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2021 a true and correct copy of the foregoing *Sur-Reply in Opposition to Motion to Remand* was electronically filed with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all parties.

*/s/ Virginia Y. Dodd*
Virginia Y. Dodd
La. Bar Roll No. 25275
ginger.dodd@phelps.com